1

2

3

4

5        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
6              AT SEATTLE

7    KENNETH C.,

8                     Plaintiff,        CASE NO. C17-5974-MAT

9          v.

10   NANCY A. BERRYHILL, Deputy          ORDER  RE: SOCIAL SECURITY
     Commissioner of Social Security for DISABILITY APPEAL
11   Operations,

12
                      Defendant.
13

14        Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of

15   the Social Security Administration (Commissioner).   The Commissioner denied plaintiff's

16   applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after

17   a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the

18   administrative record (AR), and all memoranda, this matter is AFFIRMED.

19                  **FACTS AND PROCEDURAL HISTORY**

20        Plaintiff was born on XXXX, 1985.[1]  He completed high school and attended some college.

21   (AR 64-65.)   Plaintiff previously worked as a child monitor, general hardware salesperson,

22

23   _____

          [1] Dates of birth must be redacted to the year.  Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

     ORDER
     PAGE - 1

material handler, cashier II, and stock clerk.  (AR 40, 99.)

Plaintiff protectively filed DIB and SSI applications on December 2, 2013.  (AR 247-56.) The record shows the alleged onset date of disability as October 1, 2009.  (*See, e.g.,* AR 63.)  *See also supra* at 7.   His applications were denied initially and on reconsideration.

On November 24, 2015, ALJ Kelly Wilson held a hearing, taking testimony from plaintiff and a vocational expert (VE).  (AR 60-103.)  (*See also* AR 49-59 (initial hearing on July 6, 2015 continued to allow for plaintiff to obtain representation).)   On May 9, 2016, the ALJ issued a decision finding plaintiff not disabled.  (AR 24-43.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on September 19, 2017 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  Plaintiff had worked after the alleged onset date, but the work activity did not rise to the level of substantial gainful activity.  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's morbid obesity, depression, anxiety, and avoidant personality disorder severe.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found plaintiff's impairments did not meet or equal a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to perform less than the full range of light work, with the following limitations:  lift and/or carry twenty pounds occasionally and ten pounds frequently; sit for six hours and stand and/or walk for two hours in an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb; avoid concentrated exposure to vibration and hazards, such as dangerous moving machinery or working at unprotected heights; can perform both simple and detailed tasks, but might have difficulty performing more complex tasks consistently due to anxiety; would consequently work best in an environment where he did not have to work with the general public, although occasional superficial interactions could be tolerated; and can work in proximity to coworkers and interact with them, but would perform better in more solitary work tasks.   With that assessment, the ALJ found plaintiff unable to perform past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a production line solderer, electrical accessories assembler, and inspector hand packager.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.")   Substantial

evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff avers error in evaluating the medical evidence, his symptom testimony, and lay evidence, at step three, in the RFC, and at step five. He requests remand for an award of benefits or, alternatively, for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Symptom Evaluation</u>

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[2] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ here found plaintiff's statements concerning the intensity, persistence, and

---

[2] While the Social Security Administration eliminated the term "credibility" from its sub-regulatory policy addressing symptom evaluation, *see* Social Security Ruling (SSR) 16-3p, case law containing that term remains relevant.

limiting effects of his symptoms not entirely consistent with the evidence. She provided specific, clear, and convincing reasons in support of that conclusion.

A.   <u>Treatment History</u>

In assessing symptom testimony, an ALJ properly considers evidence associated with a claimant's treatment. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (treatments or other methods used to alleviate symptoms is "an important indicator of the intensity and persistence of your symptoms"); Social Security Ruling (SSR) 96-7p and SSR 16-3p. This consideration may include the absence of treatment and/or unexplained or inadequately explained failure to seek or follow through with treatment, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005), as well as improved symptoms and favorable response to treatment, *id.*; *Morgan v. Comm'r of SSA*, 169 F.3d 595, 599-600 (9th Cir. 1999).

The ALJ found plaintiff's treatment history not consistent with his allegations. (AR 32.) While alleging disability as of October 1, 2009, there was no evidence he received any treatment for a physical or mental disorder prior to August 2013, more than three-and-a-half years after the alleged onset date. The absence of prescription medication and failure to seek treatment for such a long time indicated tolerable symptoms and undermined the alleged disability. (AR 32-33.)

Plaintiff received some therapy and counseling in 2014 and reported less depression with therapy and the medication Zoloft, but had to stop therapy because his insurance would not pay for additional sessions. (AR 33.) While reporting subsequent worsening depression, he did not follow up with his insurance company to get additional counseling, reportedly because he did not like talking to people on the telephone. Yet, he was able to attend an in-person examination to get his State financial assistance continued, indicating an ability to motivate himself when it was to his financial benefit and suggesting his mental health symptoms did not cause similar levels of

motivation.

As of December 2014, plaintiff was not taking any medication and he did not receive a follow-up for the next six months, allegedly due to his severe depression and not wanting to leave home. He sought care the day after postponement of an ALJ hearing in July 2015, reporting worsened depression since the death of his mother one year earlier, and that his depression prior to her death was not as bad as his current status. (AR 33-34.) At the November 2015 hearing, he reported trying about five different medications, each of which stopped working after a week or two. (AR 34.) However, the record reflected he took Zoloft for at least six months and reported good response. With the large number of anti-depressants available, "one would reasonably expect that a consultation with a psychiatrist might yield additional treatment recommendations." (*Id.*) No such consultation occurred. Plaintiff did not receive treatment from a psychiatrist or a psychologist, had not required psychiatric hospitalization, and often reported good response with medication management and counseling. He denied mediation side effects. At several points, he demonstrated normal mood, affect, judgment, and thought content. The lack of treatment, good response with treatment, and generally normal mood and affect suggested adequate control of symptoms with appropriate treatment.

Physically, plaintiff had not sought significant pain management and reported few, if any, back pain exacerbations during the relevant period. (*Id.*) He had minimal and significant gaps in treatment. He underwent a consultation for gastric bypass surgery, but did not qualify due to psychological issues. (AR 36.) He would have been required to participate in group support programs, which he was not comfortable with, and the programs were costly. Even if he could afford this option, he was not likely to pursue it because of his mental state. Plaintiff had not pursued physical therapy referrals. He did not recall such a recommendation, but would engage

in physical therapy if it were available. "He then stated his doctor told him he would only be covered for two or three sessions. He explained that this was not really worth his time." (*Id*.) Plaintiff appeared unwilling to pursue options that may improve his overall functioning and this lack of motivation suggests his physical impairments are not as severe as alleged. "As noted above, the claimant's depression and financial issues may play some role in this lack of treatment; however, his activities, including walking, caring for his niece, and interacting with people online, all support that the claimant's ability is greater than he asserts." (*Id*.)

Plaintiff asserts he actually alleged disability as of December 10, 2012. (*See* AR 247.) In fact, the application summaries for DIB and SSI reflect alleged onset dates of December 10, 2012 and December 1, 2012 respectively. (AR 247, 251.) However, the alleged onset date is elsewhere consistently documented as October 1, 2009, including in plaintiff's December 2013 and June 2014 disability report forms (AR 287, 298), in the denials of his applications at the initial level (AR 105-06) and on reconsideration (AR 120, 132-33), and as reported by plaintiff's counsel, in plaintiff's presence, at the November 2015 hearing (AR 63). (*See also* AR 122, 135, 218, 257-58, 272, 283, 293, 296-98, 335-38.) The ALJ properly considered, both in relation to the earlier time period and as a general matter, that plaintiff alleged disability for a number of years in which he received no treatment.

Nor did the ALJ err in failing to consider possible reasons plaintiff may not have sought or complied with treatment. SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.") As reflected above, the ALJ did properly consider the testimony and other pertinent evidence of record associated with absent treatment, including financial/insurance reasons and plaintiff's

depression. *Id.* Plaintiff does not identify support for an affirmative obligation on the part of the ALJ to engage in further inquiry. *Id.* ("We *may* need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.")

Finally, the ALJ did not improperly act as her own medical expert or engage in improper speculation. The ALJ properly considered evidence associated with plaintiff's treatment, rationally construed the evidence as calling plaintiff's testimony as to the severity of his impairment into question, and provided numerous persuasive examples in support.

B.     Medical Evidence

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p. An ALJ therefore properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *See id.*; 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4) (symptoms are determined to diminish capacity for basic work activities only to the extent the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence.") An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ found the objective medical evidence inconsistent with plaintiff's allegations. She found an absence of support in the medical evidence for plaintiff's report of inability to leave his home and crippling anxiety. (AR 33.) For example, when he first sought treatment in August

2013, a mental status examination (MSE) was positive for dysphoric mood, but plaintiff was not exhibiting any anxiety or nervousness, was alert and oriented, and had normal mood, affect, behavior, judgment, and thought content. He reported less depression with therapy and medication in 2014 and, in December 2014, increasing social interactions to keep his spirits up, but was not taking any medications. He communicated well during a July 2015 hearing and, in seeking treatment the following day, did not show signs of nervousness or anxiety, was oriented, cooperative, and in no distress, and had normal mood, affect, behavior, judgment, and thought content, and no psychomotor agitation. (AR 33-34.) He maintained good eye contact and initiated conversation. The objective findings were relatively unremarkable and inconsistent with plaintiff's subjective reports.

In addition to not seeking significant pain management, plaintiff, for the majority of the period at issue, presented with normal range of motion. (AR 34.) His A1C level was stable throughout 2013 and more recent notes did not show any testing for pre-diabetes. The record showed few, if any, reports of acute exacerbations of back pain and did not reflect exacerbations of the frequency or duration asserted by plaintiff. His back pain was described as intermittent and the record contained a single x-ray, normal and of plaintiff's hip. The minimal objective findings did not support limitations beyond that included in the RFC.

Plaintiff contends the ALJ's errors in assessing medical opinions necessarily tainted the evaluation of his symptom testimony. However, as discussed below, the Court finds no such errors. Plaintiff also maintains the ALJ improperly employed the "objective evidence test," but the ALJ did not reject his symptom testimony based *solely* on an absence of objective support. *Rollins*, 261 F.3d at 857. Nor did the ALJ ignore the fact plaintiff was prescribed Zoloft and recommended counseling in October 2013, or improperly reject his 2015 testimony based on

inconsistency with MSE findings dated two years earlier. The ALJ properly considered plaintiff's improved symptoms with counseling and medication, including Zoloft, and, among other factors, examples of objective findings inconsistent with the degree of impairment alleged.

C.      Activities

An ALJ appropriately considers inconsistencies or contradictions between a claimant's alleged limitations and his activities, conduct, and other factors. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Thomas*, 278 F.3d at 958-59. Activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ found inconsistency between plaintiff's allegations and evidence of his activities and abilities. Plaintiff participated in school full-time after the alleged onset date. (AR 33.) He was in student government, which required him to attend school, interact with students and professors, and manage his school work. This activity was inconsistent with his alleged onset date and alleged disabling social phobia, and suggested good abilities in social and cognitive functioning.

The ALJ found inconsistency between plaintiff's activities throughout the record and a finding of total disability and inability to work. (AR 34.) Even after he left school, his activities did not support disabling depression and anxiety. He watched his young niece overnight regularly during the period at issue and, while his niece slept the majority of that time, he would have been required to provide care if she woke up. (AR 34-35.) He also babysat his niece, including at least a one-month period when he watched her four-to-seven days a week. (AR 35 (citing AR 487, 491 (September-October 2014).) (*See also* AR 366 (May 21, 2013: gets niece off bus and waits for sister to come home); AR 448 (February 7, 2014: no responsibility until 3:00 when niece gets off

bus).)  The ability to undertake the physically and mentally demanding work of caring for a child during the day and the figurative "on-call" responsibilities at night argued against the alleged inability to sustain remunerative work activity.

Plaintiff had regular social interactions despite his allegation of self-isolation.  (AR 35.)  In December 2014, he reported increasing his social interactions with others.   (AR 33.)  He lives with his brother, previously lived with his sister, and prior to that lived with his mother.  He reported interacting with people online and playing video games, including with a friend once or twice a week.  (AR 35-36.)  During evaluations, he interacted appropriately and communicated his views and feelings without difficulty.   These activities indicated his ability to handle some potentially challenging social interactions and suggested functioning at a much greater level than alleged.  He also reported attempts to walk, but inability to perform sit-ups or push-ups, suggesting an ability to perform work allowing him to sit for the majority of the day.  (AR 36.)

Plaintiff points to additional information associated with his activities, such as the fact he was fired from his work study job due to his grades and had to drop out of college because he was failing.  (*See* AR 34, 70-71, 283.)   He describes the ALJ's consideration of his childcare responsibilities, social interactions, and other activities as baseless and speculative.

The ALJ is tasked with assessing a claimant's symptom testimony and resolving conflicts in the testimony and ambiguities in the record.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).  When evidence reasonably supports the ALJ's conclusion, and when the ALJ's interpretation of the evidence is rational, the decision is properly upheld.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), and *Morgan*, 169 F.3d at 599.  The Court finds no error in the ALJ's consideration of the above-described activities.

The ALJ did misconstrue a record to reflect that plaintiff looked for work.  (*See* AR 33

(citing AR 425 (March 2014: "depression high – right now not able to sleep – not looking for a job wants to feel better so that he can feel better in order to do things).)  However, given the other activities and other valid reasons for the ALJ's decision, this error is properly deemed harmless. *Carmickle*, 533 F.3d at 1162-63.  *See also Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case.").

D.    Other Factors

The ALJ found inconsistent statements regarding plaintiff's family history, noting his disclosure of a history of abuse to his counselors and to examining psychologist Dr. Keith Krueger, but not to examining psychologist Dr. Kimberly Wheeler, who evaluated him on three separate occasions.  (AR 35.)  This inconsistency made plaintiff's history and extent of his mental health issues unclear.  The ALJ also noted a December 2013 report that his mother had recently died, he needed to obtain a job to help with financial obligations, and that this caused increased anxiety because he only qualified for physical labor jobs he could not perform.  (*Id.*)  The ALJ found this suggested plaintiff did not consider himself unable to perform jobs that did not require physical labor and appeared to contradict his alleged disability.

Plaintiff did tell Dr. Wheeler he was spanked with a belt, although it was not "too extreme." (AR 366.)  He argues his willingness to disclose more detail over time is not a convincing reason to reject his testimony.  He states his expression regarding a need to obtain a job proves nothing about whether he could have sustained any type of full-time work activity, and avers he is primarily disabled by mental, not physical limitations.

In assessing symptom testimony, an ALJ properly engages in "ordinary techniques"

associated with such evaluation, such as consideration of prior inconsistent statements and statements that appear less than candid. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). In this case, neither of the examples of other inconsistencies in plaintiff's statements and reporting are particularly compelling. At the same time, the examples do not undermine the substantial evidence support for the ALJ's decision. For example, plaintiff did provide markedly different information to Drs. Wheeler and Krueger. (*Compare* AR 366 ("Recalls being spanked with a belt, 'but nothing too extreme.'"), *with* AR 451 ("[Father] is 'cold, disgusting, mean' person. . . . [C]ould be abusive at times. Hit with belt, coat hanger 'until his arms got tired'. Once punched . . . in face after broke a toy vehicle. Some other examples as well.")) Even upon seeing Dr. Wheeler for the third time, after his evaluation with Dr. Krueger, plaintiff did not disclose abuse. (*See* AR 511-12.) Nor did the ALJ improperly consider the fact that, in discussing a need to look for work, plaintiff focused on his physical limitations. (AR 383 (October 2013 follow-up appointment for depression and anxiety: "Patient informs me that he has to get a job now to help with the financial obligation and this has been causing him increased anxiety as he is only qualified for physical labor jobs, but does not feel he could actually do physical labor because of his size.")) In sum, the ALJ's assessment of plaintiff's symptom testimony has the support of substantial evidence and will not be disturbed.

Medical Evidence

Plaintiff argues the ALJ improperly rejected the opinions of examining psychologists Dr. Wheeler and Dr. Krueger, and the opinion of treating nurse practitioner Ciara Smith. As examining doctors, the opinions of Drs. Wheeler and Krueger are entitled to greater weight than the opinions of non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Because the record contained contradictory opinions from non-examining State agency psychological consultants Dr.

John Gilbert and Dr. Sean Mee (AR 112-14, 127-28), the ALJ could reject the opinions of Drs. Wheeler and Krueger with specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d. at 830-31. The opinion of nurse practitioner Smith was entitled to less weight than the opinion of a doctor, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and could be discounted with germane reasons, *Molina*, 674 F.3d at 1111.[3]

A.    Dr. Kimberly Wheeler

Dr. Wheeler evaluated plaintiff on three occasions. (AR 366-70, 468-72, 511-15.) On May 21, 2013, Dr. Wheeler assessed a Global Assessment of Functioning (GAF) score of 56 (AR 368), reflecting moderate symptoms or moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR).[4] In addition to various mild and moderate limitations, Dr. Wheeler found marked limitations in the ability to adapt to changes in a routine work setting, communicate and perform effectively in a work setting, and set realistic goals and plan independently. She identified eight-to-ten months duration of impairment with available treatment. (AR 369.) On November 4, 2014, Dr. Wheeler assessed a GAF of 54 and marked limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual, adapt to changes in a routine work setting, and complete a normal work day and week. (AR 470.) She identified nine plus months duration of

_____

[3] Regulations applicable to plaintiff's claim considered Smith as an "other source." 20 C.F.R. §§ 404.1502, 404.1513, 416.902, 416.913, and SSR 06-03p (rescinded effective March 27, 2017). New regulations include nurse practitioners and others as "acceptable medical sources," like physicians and psychologists. 20 C.F.R. §§ 404.1502, 416.902.

[4] The most recent version of the DSM does not include a GAF rating. DSM-V at 16-17 (5th ed. 2013). A GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal picture of mental functioning for a disability analysis. Administrative Message 13066 ("AM-13066").

ORDER
PAGE - 14

impairment with available treatment. (AR 471.) Finally, on October 21, 2015, Dr. Wheeler assessed marked limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual, adapt to changes in a routine work setting, ask simple questions or request assistance, and complete a normal work day and week, and an overall severity rating of marked. (AR 513.) She identified twelve plus months of impairment with available treatment. (AR 514.)

The ALJ found the May 2013 opinion an overstatement of plaintiff's mental health impairment, and not consistent with his functioning throughout the record or with his presentation to treating providers. (AR 37.) The evaluation was based on a single visit in which plaintiff was attempting to obtain State cash and medical benefits. It did not provide a longitudinal view of functioning. When plaintiff actually sought treatment in August 2013, the MSE was unremarkable and inconsistent with Dr. Wheeler's assessment. While positive for dysphoric mood, it was negative for suicidal thoughts, sleep disturbance, or self-injury. (AR 393.) Plaintiff did not exhibit anxiety or nervousness, was alert and oriented, and had normal mood, affect, behavior, judgment, and thought content. The observations were not consistent with the limitations assessed by Dr. Wheeler. The ALJ found the assessed moderate and marked limitations to have limited support and gave them minimal weight. (AR 37.)

Dr. Wheeler's November 2014 opinion was based on another one-time evaluation and likewise reflected only a snapshot of functioning, rather than a longitudinal view. (AR 39.) More importantly, the assessed moderate and marked limitations significantly overstated plaintiff's functional limitations. The ALJ found inconsistency with plaintiff's activities during the period at issue. "For example, it is not consistent with reports of playing online video games with friends for hours at a time, interacting with family, and babysitting his niece." (*Id*.) She found

inconsistency with a medical appointment one month later in which plaintiff reported his depression was better and fairly well-controlled with increased social interactions. (AR 495-98.) The ALJ gave the opinion minimal weight. (AR 39.)

The ALJ, finally, gave minimal weight to Dr. Wheeler's October 2015 opinion. (AR 39-40.) She found the opinion of marked limitations in the ability to ask even simple questions not supported by plaintiff's presentation at hearing or during numerous other medical appointments, and inconsistent with his ability to regularly seek Washington State Department of Social & Health Services (DSHS) cash and medical benefits. The ALJ identified inconsistency with findings in an October 12, 2015 medical appointment where plaintiff was not nervous or anxious, was oriented, cooperative, and in no distress, exhibited good eye contact and initiated conversation. (AR 508-09.) During the most recent hearing, plaintiff responded clearly and thoroughly to both simple and complex questions, was articulate, focused, and required little if any redirection. (AR 40.) This was similar to his presentation at the majority of non-DSHS evaluations. The ALJ found it not clear what Dr. Wheeler based this limitation on and its inclusion called into question the reliability of the other limitations assessed. Overall, Dr. Wheeler's opinion overstated the degree of plaintiff's limitations.

Plaintiff rejects the ALJ's description of these single or one-time evaluations, noting the consistency of all three opinions. He asserts the consistency of Dr. Wheeler's opinions with her own independent findings on examination, and maintains the ALJ substantially mischaracterized his very limited activities. Plaintiff rejects the alleged inconsistency with treatment notes. For example, the August 2013 note reflected his report of "generalized feeling of sadness, [complaint of] anhedonia, lack of energy[,]" and observation of dysphoric mood. (AR 392-93.) The December 2014 note included plaintiff's report he lacked energy and motivation, had a difficult

time falling asleep, and is always sleepy and naps during the day. (AR 495.) Plaintiff differentiates between an ability to function in medical appointments and to appear articulate and responsive in a hearing, with the ability to function in a competitive work environment.

The ALJ properly assigned the opinions of Dr. Wheeler minimal weight based on inconsistency with the medical record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion."); *Tommasetti*, 533 F.3d at 1041 (ALJ may reject opinion based on inconsistency with the medical record). She persuasively identified inconsistencies in MSEs and treatment notes contemporaneous to each of the evaluations. She also properly considered inconsistency with plaintiff's activities. *Rollins*, 261 F.3d at 856 (affirming rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity). The ALJ further properly considered inconsistency between a particular opinion and other evidence in the record, including plaintiff's presentation at hearing and during numerous medical appointments and evaluations. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (ALJ properly considers any factor that tends to support or contradict the opinion of a physician). She reasonably found such inconsistency to call into question other assessed limitations.

The ALJ, in sum, provided the required specific and legitimate reasons for rejecting Dr. Wheeler's opinions. As argued by the Commissioner, plaintiff in large part interprets the evidence differently. Because the ALJ provided an at least equally rational interpretation of the evidence, plaintiff does not demonstrate error.

B.    Dr. Keith Krueger

Dr. Krueger evaluated plaintiff on January 30, 2014. (AR 451-61.) He assessed a GAF of 60 (AR 453), reflecting moderate symptoms or difficulty, DSM-IV-TR at 34. He found plaintiff

in most part moderately impaired, but marked limitations in the ability to communicate and perform effectively in a work setting, complete a normal work day and week, and set realistic goals and plan independently. (AR 453.) He identified six months duration of impairment with available treatment. (AR 454.)

The ALJ found the opinion of difficulty communicating not consistent with plaintiff's ability to respond adequately during evaluations and at hearing. (AR 38.) He found the opinion inconsistent with the unremarkable MSEs, including those in August 2013 and July 2015. (*See* AR 393, 499-501.) The observations during treatment were not consistent with the limitations assessed in examinations to obtain State cash assistance and medical benefits. Just a few months prior to Dr. Krueger's evaluation, plaintiff reported his physical impairments as the primary barrier to employment. (AR 383.) The ALJ gave Dr. Krueger's opinion minimal weight.

Plaintiff reiterates arguments raised in relation to Dr. Wheeler.[5] He criticizes the ALJ's description of his reporting as misleading given that he also then reported he "has many days where he locks himself in his room and doesn't want to interact with anyone." (AR 383.) The Court, however, finds specific and legitimate reasons for rejecting the opinion of Dr. Krueger. The ALJ properly assigned the opinion of Dr. Krueger minimal weight based on inconsistency with the medical evidence of record, §§ 404.1527(c)(4), 416.927(c)(4); *Tommasetti*, 533 F.3d at 1041, and with his presentation and performance on numerous other occasions, §§ 404.1527(c)(6),

---

[5] Plaintiff asserts, for example, that Dr. Krueger's clinical findings support his opinions. However, plaintiff does not provide any supportive argument or acknowledge that the ALJ did not find Dr. Krueger's opinion inconsistent with his own findings. Nor does plaintiff acknowledge content of Dr. Krueger's report not helpful to his argument. (AR 454 ("Job would be good for his [depression]; give him some structure and focus, give him purpose, help him feel less helpless and more productive, get him moving (rather than sitting and playing video games for [hour] after [hour]. Said would like to become a programmer; vocational counseling should be able to help in this regard. [Mental health] counseling should also help, [especially] if focused on his social anxiety, teaching him more realistic ways to confront his fears of others hurting him in some way."))

416.927(c)(6).  The ALJ also reasonably considered plaintiff's reporting only a few months prior to this appointment.  The fact plaintiff complained of mental health issues at that appointment does not negate the significance of his other reporting.  Indeed, the purpose of the appointment was a follow-up for depression and anxiety.  (AR 383.)  The ALJ reasonably considered that plaintiff nonetheless discussed his obesity, not mental impairment, as the barrier to his employment.

C.    ARNP Ciara Smith

Nurse practitioner Smith completed a physical functional evaluation in December 2014. (AR 465-67.)  She assessed marked to severe limitations resulting from plaintiff's morbid obesity and from bilateral foot and knee pain secondary to morbid obesity, moderate to severe limitations associated with his low back pain, and moderate impairment in communication due to depression, and found him limited to sedentary work.  (AR 466-67.)  Smith recommended physical therapy, counseling, weight loss, and a dietician consultation.  (AR 467.)   In the associated chart note, Smith found plaintiff unable to stand for greater than ten-to-fifteen minutes before needing to rest, and able to sit for greater than twenty minutes, but often needing to lay down or stand up to alleviate pressure on his low back.  (AR 495.)  He could communicate well.

The ALJ found Smith's opinion an overstatement of physical functioning.  (AR 39.)  She found it inconsistent with plaintiff's activities, which had included walking regularly, babysitting his niece, and sitting for long periods of time in class and while playing video games.  It was also inconsistent with objective findings, which generally showed normal range of motion and objectively normal x-rays.  The ALJ assigned the opinion minimal weight.

The ALJ provided sufficient germane reasons for assigning minimal weight to Smith's opinion.  *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Tommasetti*, 533 F.3d at 1041; and *Rollins*, 261 F.3d at 856.  Plaintiff asserts a contrary interpretation of the medical record by

pointing to his obesity and other evidence in the record as objective support for Smith's opinion. He denies inconsistency with his activities. However, the ALJ offered a different, but at least equally rational interpretation of the record. The Court finds no error.

## Lay Evidence

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ can reject lay witness testimony only upon giving germane reasons. *Smolen*, 80 F.3d at 1288-89. However, the failure to address lay testimony may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'" *Molina*, 674 F.3d at 1115. The Court must look to the record as a whole "to determine whether the error alters the outcome of the case." *Id.* at 1115, 1117-22 (failure to address lay testimony harmless where witness did not describe limitations not already described by claimant, and reasons for rejecting claimant testimony applied equally well to lay witness).

The ALJ considered lay testimony from plaintiff's sister. His sister stated, for example, plaintiff had a hard time standing and walking for more than twenty-to-thirty minutes at a time without having to sit, cannot sit for more than an hour or two without having to lie down, could not sit in a waiting room without having an anxiety attack, and sometimes does not leave the house for weeks at a time. (AR 353-57.) The ALJ found the testimony somewhat credible as to observations, but not consistent with the objective medical evidence. (AR 36.) Symptoms of the severity reported by plaintiff's sister had never been described or observed in plaintiff's various psychological or physical examinations. The statements appeared inconsistent with the reported level of activity throughout the record, which included going to school full time, participating in student government, and regular babysitting. The ALJ gave the lay statement minimal weight.

Germane reasons for discounting lay testimony include inconsistency with medical evidence, evidence of a claimant's activities, and a claimant's reports. *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001). Contrary to plaintiff's contention, the ALJ provided reasons germane to his sister and supported by substantial evidence.

Plaintiff also avers error in the ALJ's failure to evaluate observations of Social Security Administration (SSA) Interviewer B. Holden on June 12, 2014. Holden observed the following when assisting plaintiff with his disability report form: "Claimant was very antsy and was moving all the time, he talked [incessantly] and appeared very [agitated]. He was with his brother and sister during the interview." (AR 299.) Plaintiff argues the failure to address these observations violated SSR 16-3p and 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), both of which indicate the SSA will consider symptom observations of agency employees.

The Commissioner asserts that, while it must be taken into account, the ALJ need only discuss lay evidence to the extent it is rejected. *See Lewis*, 236 F.3d at 511 ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."); *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ "need not discuss all evidence presented" and, rather "must explain why 'significant probative evidence has been rejected.'") (quoted source omitted); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ need not provide reason for rejecting physician's report where ALJ did not reject any of physician's conclusions and incorporated the observations into the RFC). The Commissioner argues that, consistent with Holden's observations, the ALJ found multiple severe mental health impairments and assessed significant mental limitations. Specifically, the ALJ limited plaintiff to simple and detailed tasks, while recognizing possible difficulty with completion of more complex

tasks due to anxiety, precluded work with the public beyond superficial interactions, and found him able to work in proximity to and interact with coworkers, but performing best in more solitary work tasks. (AR 31.) She avers plaintiff's failure to show inconsistency between Holden's observations and the ALJ's decision. Plaintiff replies that the ALJ, not the Commissioner, is required to evaluate the evidence. He asserts that, nonetheless, the observations at issue do show limitations precluding all competitive work.

The Court finds any error in the failure to specifically address and reject Holden's statements harmless. Plaintiff does not explain how Holden's observations reflect limitations precluding the ability to work. Nor does he identify a conflict with the RFC. The RFC did not require plaintiff to remain stationary and included limitations to minimize his interactions with others and the potential for agitation/anxiety. The ALJ properly relied on the medical evidence of record in reaching her conclusion as to plaintiff's abilities and limitations. The Court finds nothing to support the contention Holden's observations would have changed the outcome of the decision. *See, e.g.*, *Baker v. Berryhill*, No. 15-35284, 2017 U.S. App. LEXIS 26258 at *8 (9th Cir. Dec. 21, 2017) ("The ALJ also did not commit harmful error in neglecting to discuss lay witness evidence from a Social Security employee who interviewed Baker and reported Baker had difficulty with mobility and needed to stand periodically due to pain in her back and hips. The ALJ credited more reliable medical evidence that contradicted this lay witness opinion, and Baker has not shown how omitting discussion of the lay witness testimony would have changed the ALJ's decision. Thus, any error was harmless.") (citing *Molina*, 674 F.3d at 1119).

<u>Step Three</u>

Plaintiff contends the opinions of Dr. Wheeler, Dr. Krueger, and Smith, considered with her testimony and the lay testimony, show satisfaction of Listings 12.04 (depression) and/or 12.06

(anxiety), given the at least marked limitations in social functioning and in concentration, persistence, or pace. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. He "also arguably meets or equals the C criteria of these listings." (Dkt. 12 at 17.)

Plaintiff bears the burden of proof at step three. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). To meet a listing, an impairment "must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). To establish equivalency, there must be "medical findings equal in severity to *all* the criteria" for the listing. *Id*. at 531. The ALJ did not err in considering the opinion evidence or testimony. Plaintiff does not meet his step three burden with his cursory and conclusory assertion of error.

RFC and Step Five

Plaintiff also avers error in the RFC and at step five based on the alleged errors in relation to opinion evidence and testimony. This mere restating of arguments does not establish error at step four or step five. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

**CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 13th day of November, 2018.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 23